LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 East San Alberto Drive, Suite 200
SCOTTSDALE, ARIZONA  85258
(480) 222-9100
gmurphpy@mf-firm.com
Veronica L. Manolio, SBN 020230
John C. Shorb, SBN 023995
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Felisa Tunac, a single woman, on behalf of herself, and as the Personal Representative of the Estate of Randy Tunac (Veteran), Deceased,<br><br>Plaintiff,<br>v.<br><br>United States of America;<br>NP West, a United States employee;<br>John Doe Chang, a United States employee;<br>John Doe Costantino, a United States employee,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

For her claims against the United States of America, Plaintiff Felisa Tunac hereby alleges as follows:

## **PARTIES AND JURISDICTION**

1. Plaintiff Felisa Tunac ("Felisa") is a single woman and resident of Maricopa County, Arizona.

2. Felisa is the surviving spouse and Personal Representative of the Estate of Randy Tunac ("Randy").

3. Randy was a medically-retired United States Veteran who continued to receive treatment from the United States Department of Veterans Affairs' (the "VA").

1     4.    Randy died while awaiting treatment at United States Department of Veterans Affairs' Carl T. Hayden VA Medical Center located in Phoenix, Arizona ("the Phoenix VA").

    5.    Defendant United States of America (the "United States") is a sovereign and body politic.

    6.    Defendant NP West is/was a United States employee working in the Renal Section of the Phoenix VA at all time relevant to this Complaint.

    7.    John Doe Costantino, M.D. is/was a medical provider and believed to be an employee of the United States working in the Phoenix VA at all times relevant.

    8.    John Doe Chung, M.D. is/was a medical provider and believed to be an employee of the United States working in the Phoenix VA at all times relevant.

    9.    There may be additional United States employees, presently unknown, who caused or contributed to the death of Randy Tunac, and Felisa will move to amend this Complaint (if necessary) to add any such Defendants who are discovered in this case.

    10.    Each employee named herein (and to be amended hereafter) is believed, upon information and investigation, to have been working within the scope of his or her employment in taking the actions that give rise to this lawsuit.

    11.    This Court has jurisdiction over this dispute pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346.

    12.    Felisa properly submitted an Administrative Claim with the VA prior to filing this lawsuit, and the VA denied her claim on or about October 8, 2015. Explicit denial of her claim allowing this suit under 28 U.S.C. § 2675(a), and this lawsuit is timely based on the six (6) month deadline in which to file.

    13.    The acts, events or transactions that form the basis for this lawsuit occurred in the District of Arizona. Accordingly, venue is proper herein and Arizona law shall apply to the claims in this matter pursuant to 28 U.S.C. § 1346(b)(1).

**FACTUAL ALLEGATIONS**

14. Felisa incorporates the above paragraphs as if repeated here verbatim.

15. In 1995, Randy began a six month deployment with the United States Navy in the Mediterranean.

16. Before Randy completed his deployment, he began to experience serious medical issues and, as a result, he was evacuated back to Norfolk, Virginia and then to Fort Smith Naval Base for testing.

17. Randy was diagnosed with lupus nephritis, an inflammation of the kidneys caused by systemic lupus erythematous, an autoimmune disease. It was explained to him in simple terms that, "when the kidneys are inflamed, they cannot function properly, and, if the condition is not controlled, it can lead to kidney failure," or words to that effect.

18. After his diagnosis, Randy began undergoing chemotherapy treatment.

19. Two years after his initial diagnosis, Randy finally recovered.

20. However, in approximately September 1997, Randy's lupus relapsed, and he was then medically retired from the military.

21. Randy received continual care from the VA during this entire time.

22. After his medical retirement from the United States Navy, Randy attended law school, was admitted to the Arizona State Bar, and began practicing law.

23. Shortly after beginning his practice in 2001, Randy suffered a heart attack.

24. Although Randy continued his treatment for lupus within the VA system and, specifically, at the VA Medical Center, he was treated for his heart condition by a non-VA/private care cardiologist, David C. Wilcoxson, M.D.

25. In the summer of 2009, Randy saw Dr. Wilcoxson and had bloodwork done. Randy's bloodwork indicated that his kidney function was failing and he needed to be seen right away because his condition was at the point where it could soon become a life or death situation.

26. Dr. Wilcoxson ordered Randy to make an appointment immediately at the VA Medical Center.

27. Randy promptly contacted the VA and expressed the emergency need(s). Despite the urgency of Randy's condition, the earliest Randy could get an appointment at the VA Medical Center was October or November 2009, *months* after his diagnosis and Dr. Wilcoxson's order.

28. As Dr. Wilcoxson predicted, while Randy was waiting to receive care at the VA Medical Center, Randy's kidneys began to fail.

29. Randy was **finally** seen December 2, 2009, where his kidney was biopsied at the VA Medical Center.

30. The VA's results of the biopsy confirmed that Randy had reached end-stage kidney disease, and Randy was scheduled to begin undergoing dialysis for this condition.

31. Again, the VA could not schedule Randy immediately and set his next appointment for December 30, 2009 – nearly a month later.

32. The VA did not schedule Randy to commence "treat[ment] of [his] active lupus nephritis" until January 14, 2010.

33. While awaiting these appointment dates, Randy's condition progressed.

34. On December 23, 2009, Randy collapsed at work and was rushed by ambulance to St. Joseph's Hospital in Phoenix, Arizona.

35. Randy was pronounced brain dead upon arrival.

36. Randy passed away on December 27, 2009, at the young age of 47, leaving behind his wife, Felisa and his sons, Joshua and Bryan.

37. Randy suffered respiratory failure due to congestive heart failure, coronary artery disease, and anoxic encephalopathy, all of which result from renal failure.

38. The VA and its employees failed to timely schedule or address Randy's dire medical condition with the attention it required.

39. No attempt was made to perform any necessary triage with regard to Randy or to accelerate the treatment that Randy desperately needed.

40. The VA and its employees were, however, well aware of the gravity of Randy's medical condition as the VA wrote to Randy notifying him that his "active lupus nephritis" was of a "serious nature" and required immediate treatment or would end in "end stage kidney disease and even death." *See*, **Exhibit 1** here.

41. Sadly, Felisa received Exhibit 1 after Randy had already died from the VA's failure to timely treat his disease.

42. Randy's premature death was entirely avoidable if Randy was to have received timely treatment from the VA and its employees at the Phoenix VA.

**The Discovery of a Cause of Action**

43. At the time that Randy passed, Felisa had no knowledge (and no reason to investigate) the timing of Veterans' appointments within the Phoenix VA.

44. In or about May 2014, Felisa learned for the first time of the widespread, systemic issues of delayed patient care within the VA and at the Phoenix VA, following media reports.

45. Media reports alerted Felisa that the Phoenix VA and its employees had been engaged in "gross mismanagement" and "unacceptable wait times" that were contributing to otherwise preventable veteran deaths, including Randy's.

46. Felisa then investigated and learned that an Internal Audit of the VA (dated June 9, 2014) confirmed how veterans were left waiting or never received necessary care; the VA and its employees used "unofficial" lists and inappropriate practices to make waiting times appear more favorable; and, multiple veterans died as a result.

47. By August 26, 2014, the VA issued its "Full Report," concluding there was "unacceptable and troubling" negligence in terms of follow-up, care coordination, quality and continuity of care.

48. Within two (2) years of learning of her cause of action, Felisa submitted her Notice of Claim and filed the pre-requisite Administrative Claim for this lawsuit.

**Negligence and Causation**

49. The Phoenix VA failed Randy with the follow-up, quality and continuity of his kidney condition.

50. Randy's *private* doctor, not the VA, ordered the blood tests that showed Randy's relapse. The VA failed to properly order tests and/or evaluate Randy's recurring lupus condition.

51. Had the VA and its Employees properly followed-up with and monitored Randy's condition, the relapse would have been discovered earlier.

52. Even when the Phoenix VA was notified of the blood results and the immediate need for treatment, the VA and its employees exacerbated Randy's condition by failing to timely schedule Randy for treatment of his condition.

53. The Phoenix VA identified and understood the necessity of immediate treatment, as evidenced by **Exhibit 1**. The Phoenix VA expressly acknowledged that it the scheduling coordinator, doctors and staff were all "very concerned" about Randy. The Phoenix VA expressly stated that Randy needed immediate treatment or would suffer "end stage kidney disease and even death."

54. The Phoenix VA was correct in its assessment, and the failure to timely treat Randy indeed, caused his premature death.

55. At a bare minimum, the Phoenix VA and its employees contributed to the untimely death.

**Damages**

56. Based on the death of her husband, Felisa incurred costs of medical care, costs for funeral/burial expenses, and other economic expenses that Felisa was made to pay out-of-pocket. The amount of these damages will be proven at trial.

57. Felisa also suffered the loss of Randy's wages/income, which shall be recoverable in an amount to be proven at trial. This includes the loss of Randy's future wages due to his premature death.

58. As a result of the loss of Randy's income, Felisa was unable to sustain the payments on the family home she had shared with Randy and their seven year old son, Joshua. The house was sold at a Trustee Sale, conducted right at her own front door.

59. Finally, as a result of the untimely death, Felisa suffered pain and suffering, loss of consortium, emotional distress and mental anguish as a survivor, and disruption to her family.

60. Felisa is entitled to damages both for herself, individually, as a survivor of this unfortunate death **and** on behalf of the Estate as the PR of her deceased husband.

## COUNT I
## WRONGFUL DEATH

61. Felisa incorporates the allegations above as though fully set forth herein.

62. As alleged herein, the VA and its Employees caused Randy's death through their wrongful acts and neglect, including, specifically by:

    a. Failing to provide Randy with adequate follow-up care and treatment to monitor Randy's condition and identify any potential relapses or adverse changes to his health.

    b. Failing to schedule Randy for immediate (or even timely) treatment after the deterioration of his condition, as evidenced by his blood work in 2009.

    c. Failing to schedule Randy for immediate dialysis after the results of his kidney biopsy in December 2009.

63. At all relevant times, the employees of the VA, acting within the course and scope of their employment.

64. The United States (and the VA) are liable for the acts and omissions of the employees pursuant to the Federal Tort Claims Act.

65. As a direct and proximate result of the acts and omissions alleged herein, Felisa suffered and continues to suffer, loss of consortium, loss of companionship, stress, pain and suffering, mental anguish, and all available damages for the wrongful death of Randy (as detailed above, and in an amount to be proven at trial). Damages shall include, but not be limited to, economic losses, including, but not limited to, the costs of funeral and burial and other final expenses, loss of financial support, loss of income, and other economic benefits in an amount to be proven at trial.

## COUNT II
## NEGLIGENCE/MEDICAL MALPRACTICE

66. Felisa incorporates the allegations above as though fully set forth herein.

67. The employees and the VA owed a duty to Randy to provide him with timely, quality healthcare.

68. The employees and the VA breached that duty through their actions and omissions herein.

69. At all relevant times, the employees were employees of the VA, acting within the course and scope of their employment. As a result, the VA is liable for the acts and omissions of the Employees pursuant to the Federal Tort Claims Act.

70. As a direct and proximate result of the breaches alleged, Felisa suffered and continues to suffer, loss of consortium, loss of companionship, stress, pain and suffering, mental anguish, and all available damages for the wrongful death of Randy (as detailed above, and in an amount to be proven at trial). Damages shall include, but not be limited to, economic losses, including, but not limited to, the costs of funeral and burial and other final expenses, loss of financial support, loss of income, and other economic benefits in an amount to be proven at trial.

WHEREFORE, Felisa prays that this Court enter judgment against the United States as follows:

A. For compensatory and consequential damages in an amount to be proven at trial;

B. For any and all other available damages for the wrongful death of Randy, as allowed by law;

C. For Felisa's attorneys' fees and costs incurred herein;

D. For pre and post-judgment interest at the highest rate allowable by law; and,

E. For such other relief as the Court may deem just and proper.

DATED this 8th day of April, 2016.

**MANOLIO & FIRESTONE, PLC**

By: /s/ Veronica L. Manolio
Veronica L. Manolio
John C. Shorb
8686 E. San Alberto Drive, Suite 200
Scottsdale, Arizona 85258
*Attorneys for Plaintiff*

# EXHIBIT 1



# DEPARTMENT OF VETERANS AFFAIRS

Carl T. Hayden VA Medical Center
650 E. Indian School Rd.
Phoenix, Arizona 85012
(602) 277-5551



January 14, 2010

Randy Tunac
17313 West Young Street
Surprise, Arizona 85388

Dear Mr. Tunac,

We missed you at your 12/30/09 and 1/14/10 Renal Clinic appointments and also you missed your Outpatient Department infusion appointment today to start your treatment of Cytoxan to treat your active lupus nephritis. Dr Costantino, Dr Chang, the staff, and I are very concerned about you. I have attempted multiple times to reach you by phone unsuccessfully so I am mailing this letter to inform you of the serious nature of not treating your active lupus kidney disease. The consequence of not treating your lupus kidney disease includes end stage kidney disease and even death. I strongly recommend that you contact us at your earliest convenience (602-277-5551 x7277) to ensure that you are OK and also to arrange to start your treatment as soon as possible or at least to alert us if you are being treated by another provider. If we do not hear from you by 1/19/10 then we will contact the police department to do a courtesy safety check on you. We look forward to hearing from you and working with you. Thank you.

Sincerely,

*R West ANP*

NP West
Renal Section, Phoenix VA




DEPARTMENT OF VETERANS AFFAIRS
CARL T HAYDEN
VA MEDICAL CENTER
650 E INDIAN SCHOOL RD
PHOENIX AZ 85012-1892

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300
RETURN AFTER 5 DAYS

CERTIFIED MAIL

7004 2510 0004 2886 0409

Randy Tunac
17313 West Young Street
Surprise, Arizona 85388

PHOENIX AZ 850

US POSTAGE
FIRST-CLASS
$5.54
071V00670629
85027
000023269
endicia.com